IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 27, 2015 Session

## VINCENTE ACOSTA v. KITY SONIA ACOSTA

**Appeal from the Circuit Court for Hamilton County**
**No. 11D341     J.B. Bennett, Judge**

---

**No. E2015-00215-COA-R3-CV-FILED-APRIL 26, 2016**

---

This is a divorce case.  On appeal, Vincente Acosta (Husband) argues that the trial court erred in reopening the proof shortly after the conclusion of a nonjury trial.  The court did so for the purpose of receiving additional evidence on the subject of spousal support. Husband also argues that the trial court erred in ordering him to pay Kity Sonia Acosta (Wife) alimony in futuro of $1,500 per month.  We hold that the trial court did not abuse its discretion in reopening the proof and thereafter awarding Wife spousal support in futuro.  Accordingly, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Katherine H. Lentz, Chattanooga, Tennessee, for appellant, Vincente Acosta.

Rachel Bonano, Knoxville, Tennessee, for appellee, Kity Sonia Acosta.

### OPINION

### I.

The parties were married in Mexico in 1999, divorced in 2002, and remarried in Georgia in 2005.  No children were born to their union.  Wife had three children, all of whom were adults at the time of trial.  The parties separated for the last time in 2010. Husband filed a complaint for divorce on February 11, 2011.  The trial court entered an agreed order requiring Husband to pay spousal support pendente lite of $1,250 per month.

A bench trial was held on October 7, 2014. Husband and Wife were the only witnesses. The primary issue was spousal support, *i.e.*, whether any should be ordered and, if so, what type, in what amount, and for what duration.[1] At the conclusion of the trial, the court stated the following from the bench:

> I would like to set rehabilitative alimony for a term not to exceed two years, at which time we'll come back and determine whether or not, with reasonable effort, [Wife] has been able to achieve rehabilitation or not and at that time whether or not rehabilitative alimony should be extended.
>
> The Court finds that rehabilitative alimony for that period will be in the amount of $1,000 per month. While being mindful of the expressed intent that the Court maintains control for the duration of that award, the Court will entertain any petition to modify upon showing of a substantial and material change in circumstances.

The court asked the parties "to submit proposed findings of fact and conclusions of law in lieu of closing argument on the issue of alimony." It did not enter a written order incorporating its oral statements from the bench.

On October 23, 2014, after the parties filed their respective findings of fact and conclusions of law, the trial court entered an order stating that "[t]he Court desires additional evidence on the issue of alimony, specifically the form, amount, and duration, if any." Husband objected to the trial court's sua sponte decision to reopen the proof.

A hearing was held on December 4, 2014. At the beginning of the hearing, the trial court explained that it had reconsidered the amount of spousal support based on the proof presented at the earlier October 7, 2014 trial. The court reasoned that $1,500 per month was the appropriate amount, stating:

> I have also – based upon the evidence from the October 7th, 2014 hearing – have concluded that if there is a rehabilitation alimony award, it should be higher than the $1,000 per month and it should be $1,500 per month, but with a $250 per month credit for dissipation of [Husband's] assets.

---

[1] The trial court observed in its final divorce judgment that "[t]he parties stipulated many of the facts and the categorization and division of the property. The main dispute involved alimony."

2

The Court has also concluded, again based on the October 7, 2014 hearing, that alimony in futuro award, if that's awarded, should also be $1,500 per month again, though, with a $250 per month credit for dissipation.

\* \* \*

[B]ased on October 7 proof alone, I am awarding alimony and an amount of alimony. My only question is: Is it going to be rehabilitative or in futuro?

\* \* \*

I've already awarded based on the evidence before the Court on October 7 that there is an alimony award and the amount. It's just a question of form. And I think that . . . allows me to reopen the proof.

Wife was the only witness at the December 4, 2014 hearing. She testified briefly about her health, employment history, and capacity to work given her physical disabilities.

Following the hearing on the reopening of the proof, the court, on January 7, 2015, entered its final divorce judgment, finding and holding, in pertinent part, as follows:

The Court concludes that Wife is economically disadvantaged relative to Husband, Wife has a need for alimony, Husband has the ability to pay alimony, and the applicable factors overall favor awarding alimony. Husband's fault regarding domestic violence and, to a much lesser extent, his repeated violations of this Court's protective orders, are part of this conclusion. However, even leaving aside fault, the other [statutory] factors overall favor awarding alimony.

\* \* \*

After considering the entire record in light of the applicable statutes and case law, the Court concludes rehabilitation of Wife, to achieve a post-divorce standard of living expected to be available to Husband, is not likely to occur with reasonable effort, is unlikely to be feasible, and, therefore, Wife is not

3

capable of economic rehabilitation. The Court also concludes
Wife requires long-term support.

The trial court ordered Husband to pay $1,500 per month alimony in futuro – the award to be offset by a judgment against Wife in the amount of $7,183 for the value of Husband's personal property that Wife dissipated by giving it away to a charitable institution. Husband timely filed a notice of appeal.

## II.

Husband raises the following issues, as quoted from his brief:

> Whether the [t]rial [c]ourt erred in its sua sponte decision to reopen the proof relative to the issue of alimony.

> Whether it was error, after reopening the proof, to award Wife alimony in futuro of $1,500[ ] per month after the [t]rial [c]ourt's previous announcement of an award of rehabilitative alimony of $1,000[ ] per month for two (2) years at the conclusion of the parties' original trial.

(Paragraph numbering in original omitted.)

## III.

The Supreme Court has provided the standards and principles that guide our review of a trial court's alimony decision:

> For well over a century, Tennessee law has recognized that trial courts should be accorded wide discretion in determining matters of spousal support. This well-established principle still holds true today, with this Court repeatedly and recently observing that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award.

> Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." Rather, "[t]he role of

4

an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. This standard does not permit an appellate court to substitute its judgment for that of the trial court, but " 'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.' " Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011) (internal citations and footnote omitted).

Our review of this nonjury case is de novo upon the record of the proceedings below with a presumption of correctness as to the trial court's factual findings, a presumption we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). We review the trial court's conclusions of law de novo with no presumption of correctness. *Oakes v. Oakes*, 235 S.W.3d 152, 156 (Tenn. Ct. App. 2007).

## IV.

## A.

Regarding the trial court's decision to reopen the proof, the general rule has been stated by the Supreme Court:

Permitting additional proof, after a party has announced that proof is closed, is within the discretion of the trial court, and unless it appears that its action in that regard has permitted

5

injustice, its exercise of discretion will not be disturbed on appeal. *State v. Bell*, 690 S.W.2d 879 (Tenn. Crim. App. 1985).

*Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 149 (Tenn. 1991). In *McBay v. Cooper*, No. 01A01-9205-CV-00202, 1992 WL 205256 (Tenn. Ct. App. M.S., filed Aug. 26, 1992), this Court further stated,

> [t]he mere fact that evidence adduced after reopening the case produced a different result is not determinative of trial court error, for the trial court is entitled to and should have the benefit of all available evidence for its assistance in arriving at a just determination. The injustice which renders erroneous a reopening of proof is serious inconvenience to a party, the jury or the court, or the introduction of further evidence without a fair opportunity for rebuttal.

1992 WL 205256, at *3; *cf. Rainbo Baking Co. of Louisville v. Release Coatings of Tenn., Inc.*, No. 02A01-9510-CH-00223, 1996 WL 710928, at *3, *6 (Tenn. Ct. App. W.S., filed Dec. 12, 1996) (holding that "permitting a retrial on the issue of damages was an injustice to the defendant" where plaintiff "in effect, received a 'new trial' or 'another bite at the apple' because it was allowed to re-present its case regarding the issue of damages after it had previously failed to do so").

In the present case, no "injustice" resulted from the trial court's decision to reopen the proof. There was no "serious inconvenience" to Husband, and he had an opportunity to rebut Wife's evidence, or present further evidence of his own without any limitation. Wife's testimony at the second hearing, held less than two months after trial, was almost entirely duplicative of her trial testimony, particularly in regards to her income, work history, and health condition. Under these circumstances, we find no abuse of discretion in the trial court's decision to reopen the proof after trial.

### B.

Regarding the trial court's decision to increase the alimony award, and to reconsider the type of alimony that was appropriate, it is clear that the trial court simply changed its mind upon further reflection upon the proof presented at trial. As this Court has observed,

> A trial court has the authority to alter or amend its judgment before it becomes final. *Jerkins v. McKinney*, 533 S.W.2d

6

275, 280 (Tenn. 1976); *Newport Hous. Auth., Inc. v. Hartsell*, 533 S.W.2d 317, 320 (Tenn. Ct. App. 1975). Thus, as long as its judgment has not become final, the trial court may change its mind after reconsidering the proof and the applicable law.

*Waste Mgmt., Inc., of Tenn. v. S. Cent. Bell Tel. Co.* 15 S.W.3d 425, 429 (Tenn. Ct. App. 1997); *accord In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013).

## C.

An award of spousal support is governed by Tenn. Code Ann. § 36-5-121 (2014), which "recognizes four distinct types of spousal support: (1) alimony in futuro, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony." *Mayfield v. Mayfield*, 395 S.W.3d 108, 115 (Tenn. 2012). The trial court considered awarding either alimony in futuro or rehabilitative alimony in this case. As the Supreme Court stated in *Mayfield*,

> Alimony in futuro, a form of long-term support, is appropriate when the economically disadvantaged spouse cannot achieve self-sufficiency and economic rehabilitation is not feasible. *Gonsewski*, 350 S.W.3d at 107. . . . [R]ehabilitative alimony is short-term support that enables a disadvantaged spouse to obtain education or training and become self-reliant following a divorce.

395 S.W.3d at 115. "Tennessee statutes concerning spousal support reflect a legislative preference favoring rehabilitative or transitional alimony rather than alimony in futuro or in solido." *Id.* As we have observed, however,

> [a]lthough there is a legislative preference for awarding rehabilitative alimony, "when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible," an award of alimony in futuro is warranted. Tenn. Code Ann. § 36–5–121(f)(1). In other words, alimony in futuro is appropriate when

>> the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the

standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse.

*Jackman v. Jackman*, 373 S.W.3d 535, 544 (Tenn. Ct. App. 2011) (internal citation omitted).

Tenn. Code Ann. § 36-5-121(i) provides as follows:

In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

In a thorough sixteen-page judgment, the trial court correctly recognized and discussed the statutory criteria implicated by the facts found by the court. At the time of the divorce, Husband was sixty years old and Wife was forty-two. Husband had been employed at a local restaurant for about thirty years and was serving as assistant manager. His average yearly income over the four years prior to trial was $52,687. Wife has a very limited employment history. She testified that she cleaned houses for a friend, worked as many hours as her health would permit, and earned approximately $70 per month. Husband did not graduate from high school. Wife has a high school diploma and one year of training at a university in Mexico about twenty years ago. Wife speaks very little English. She required a translator in order to testify and understand questioning. The trial court found this to be a "significant language barrier," and observed that Wife

> also had difficulty comprehending certain questions, even given the benefit of translation. This difficulty in comprehension appeared genuine and, therefore, credible.

Wife filed an affidavit of indigency, and the trial court found her to be indigent and eligible to proceed on a pauper's oath.

Husband appears to be in general good physical and mental health. He presented no evidence to the contrary. Wife testified that she suffers from (1) chronic headaches and (2) back pain, which was caused by Husband's physical abuse. She said that her

9

physical condition makes it impossible for her to do anything other than light duty work for relatively short periods of time. The trial court found that Husband had done the things alleged in an earlier-awarded order of protection, including nine years of verbal, emotional, physical, and sexual abuse. The trial court further stated in its final judgment:

> Wife's work-related back injury was aggravated in November, 2010 due to Husband's domestic violence against Wife. The Court also credits Wife's testimony that she began having headaches after the domestic violence, she has back pain, she cannot sit or stand for long periods of time, she can only perform light duty work and her vision has been affected.
>
> \* \* \*
>
> Although Wife is not found to be "physically disabled" or to suffer from a "chronic debilitating disease," as the Court understands those terms in the context of the pertinent statute, the statute explicitly is "not limited to" such specific conditions. The Court finds the Wife to have a physical condition involving her back which limits her physical capabilities, based upon the testimony of the work-related injury, aggravated by Husband's domestic violence committed against Wife, and its continued current effects, as well as headaches and adversely affected vision, both of which she has since the domestic violence.

(Footnote omitted.)

There was essentially no marital estate. The marital residence had been lost to foreclosure. As separate property, each party received two vehicles and the money in their respective checking accounts – $100 to Wife, and about $1,200 to Husband. Husband states in his brief that "[i]t was undisputed that Wife retained possession and unilaterally gave the majority of Husband's separate property to a local non-profit, The Samaritan Center." As already noted, the trial court valued this property at $7,183 and awarded Husband a judgment in this amount.

The evidence does not preponderate against the trial court's factual findings, including its finding that "Wife is not capable of economic rehabilitation" with reasonable effort. Wife's need is clearly established. Husband did not dispute his ability to pay. On appeal, Husband argues that the trial court's alimony award was punitive.

10

While the parties' relative fault is a factor to be considered in determining the nature and amount of an alimony award, Tenn. Code Ann. § 36-5-121(i)(11), alimony "is not and never has been intended by our legislature to be punitive." ***Russell v. Russell***, No. M2012–02156–COA–R3–CV, 2013 WL 6228164, at *7 (Tenn. Ct. App. E.S., filed Nov. 27, 2013) (quoting ***Lindsey v. Lindsey***, 976 S.W.2d 175, 179–80 (Tenn. Ct. App. 1997)). In this case, the trial court properly considered the parties' relative fault, but there is no indication that it placed such a heavy emphasis on Husband's fault that the judgment was thereby rendered punitive. We find no merit in this argument.

## V.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, Vincente Acosta. The case is remanded for enforcement of the trial court's judgment and collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE

11