IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 3, 2017

**CYNTHIA M. KANKA v. CHRISTOPHER KANKA**

**Appeal from the Chancery Court for Marshall County**
**No. 17176, 17177    J. B. Cox, Chancellor**

_____

**No. M2016-01807-COA-R3-CV**

_____

This appeal arises from a judgment of divorce and an award of damages in tort. The trial court awarded the wife an absolute divorce and full custody of their minor child. After determining that the husband was willfully and voluntarily underemployed, the court set child support based on his earning capacity rather than his actual gross income. Then, the court classified, valued, and divided the marital property and awarded the wife both alimony in futuro and alimony in solido. The court also granted the wife a judgment for compensatory damages on her tort claim. On appeal, the husband challenges the court's determination that he is willfully and voluntarily underemployed, the valuation of the marital residence, the alimony awards, and the award of damages in tort. After careful review, we vacate the court's award of damages to the wife for her child's pain and suffering. In all other respects, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Vacated in Part**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and ARNOLD B. GOLDIN, JJ., joined.

Thomas F. Bloom (on appeal), Nashville, Tennessee, for the appellant, Christopher Kanka.

Wesley Mack Bryant, Columbia, Tennessee, for the appellee, Cynthia M. Kanka.

# OPINION

## I.

### A. PROCEDURAL HISTORY

#### 1. Chancery Court Proceedings

On November 5, 2014, after a 24-year marriage, Cynthia Kanka ("Wife") filed a complaint for an absolute divorce from Christopher Kanka ("Husband") in the Chancery Court for Marshall County, Tennessee. Wife's divorce complaint also included a claim for damages in tort based on allegations of domestic abuse. The couple had one minor child, Veronica, who was sixteen at the time of the divorce filing.

On the same day, Wife petitioned the Marshall County General Sessions Court for an order of protection from Husband on behalf of herself and her daughter. The general sessions court issued an ex parte temporary order of protection and, based on the pending divorce action, transferred jurisdiction to chancery court.

On November 12, 2014, the chancery court approved an agreed order setting pendente lite support and continuing the temporary protective order indefinitely. The court also ordered Husband to deposit all employment income into the parties' joint checking account so that Wife could pay the family expenses. Husband was allowed to withdraw a specified amount twice a month for his personal expenses. On April 14, 2016, after Husband stopped making the required deposits, the court issued a new order requiring Husband to pay $2,500 each month for spousal and child support pending the final hearing.

#### 2. Juvenile Court Action

On the same day Wife filed her divorce complaint, the Tennessee Department of Children's Services ("DCS") filed a petition in the Juvenile Court for Marshall County, Tennessee, to adjudicate Veronica dependent and neglected and for a restraining order, based on allegations of domestic abuse. Preliminarily, the juvenile court, with the consent of both parents, granted temporary custody of Veronica to Wife and enjoined all contact with Husband unless recommended by the child's counselor.

After DCS presented its proof at the adjudicatory hearing, the parents stipulated that Veronica was dependent and neglected. Although Husband did not admit wrongdoing, he agreed that there was sufficient evidence to support a finding by clear and convincing evidence that the child was dependent and neglected. The juvenile court found the stipulation to be in Veronica's best interest and also found, by clear and convincing evidence, that Veronica was dependent and neglected for the reasons set forth

2

in the petition. The court granted full custody to Wife and restrained Husband from any contact with the child. The court also ordered Husband to complete a series of steps before seeking to resume contact. The juvenile court then transferred continuing jurisdiction to the chancery court.

## B. PROOF AT TRIAL

The chancery court held a one-day trial on May 19, 2016. Both Husband and Wife testified. The court also heard testimony from a clinical psychologist, the guardian ad litem from the juvenile court action, and the DCS case investigator.

Husband and Wife married on December 29, 1990, in Michigan. While the couple was living in Michigan, Wife was employed as an executive assistant, and Husband worked for General Motors. When their daughter was in first grade, they decided to move to Tennessee to be closer to Husband's parents. Husband transferred to the GM facility in Spring Hill, Tennessee. But the couple agreed that instead of seeking new employment after the move, Wife would be a full-time homemaker. For the next eleven years, although Husband worked in different GM facilities, each spouse continued their respective roles as wage earner and homemaker. When Wife filed for divorce, Husband was employed as a quality supervisor at GM's Spring Hill facility earning $7,051 each month.

Wife testified that the marriage was always rocky. "It wasn't a picture perfect marriage, and as time went on I just kept making excuses for poor behavior." Husband was a heavy drinker and verbally abused Wife when drinking. At times, his behavior would improve, but "at the very end it just got more violent than I could handle."

In 2013, Wife was injured in a car accident. After the accident, because Wife was unable to perform her household duties at the level Husband demanded, the abuse escalated. Wife gave examples of Husband's violent behavior, including breaking dishes, shoving, shouting insults, and shaking his fist in her face. On one occasion, Husband "head butted" their daughter, and when Wife intervened, Husband punched her hard enough to break a rib. After the broken rib incident, Wife confided in a neighbor, who reported the abuse to DCS. Then, as Wife explained, "everything kind of happened in a whirlwind."

At the recommendation of DCS, Wife and daughter participated in individual and family counseling. LuCinda Pincince, a senior psychological examiner who specialized in trauma, testified that both Wife and daughter reported being verbally, emotionally, and physically abused by Husband. Ms. Pincince diagnosed Veronica with chronic adjustment disorder with anxiety and Wife with chronic adjustment disorder with depression and anxiety.

3

For his part, Husband denied any physical abuse. But he acknowledged stipulating that Veronica was dependent and neglected.

After she filed for divorce, Wife sought employment outside the home and was hired as a manager at a local grocery store. At the time of trial, she was earning $2,131 per month working full time. But Wife's earnings covered less than half of her reported expenses.

After Wife obtained the protective order, Husband moved in with his parents in Florence, Alabama. According to Husband, his work performance at the Spring Hill facility began to suffer, and on August 31, 2015, he was placed in a personnel improvement program. Husband claimed that from this point forward his work was never deemed satisfactory, and he believed that his job was in jeopardy. He also began to experience anxiety attacks.

When he complained about his treatment at work to the human resources department, Husband was offered a severance package. In October, he accepted the offer and terminated his employment effective November 30, 2015. Under the terms of his separation agreement, Husband received full pay through December 1, 2015, and then four months of severance pay. At trial, he admitted that, in violation of the court's pendente lite support order, he kept his last three severance payments, totaling $8,100, to pay his personal expenses.

Husband agreed that he was not fired. He voluntarily terminated his employment because he feared he might be fired. He expressly acknowledged in his separation agreement that his decision to terminate employment was voluntary and not the product of coercion or duress.

A few weeks after accepting the severance package, Husband moved to Detroit, Michigan. He admitted that he had no job prospects in Detroit when he made his decision to move. He "just had to get away." A friend in Detroit agreed that he could move in with her, and at the time of trial, Husband was still living in his friend's home rent-free.

As part of his severance package, Husband had access to the services of a placement firm. He waited three months before contacting the placement firm because he "wanted to start life again" and "needed some [me] time." The firm helped him draft a resume, which he posted online in March 2016. He periodically checked online for potential jobs and responded to phone calls from headhunters. But he only submitted one job application, which was unsuccessful.

Husband complained that his job search was hampered by his lack of an engineering degree and the restrictions in his GM separation agreement. Although

4

Husband worked for 34 years as an engineering employee at GM, he did not have a college degree. And Husband had agreed in his separation agreement not to seek or accept reemployment with GM or to work on GM property as a contract worker or as an employee of a GM supplier. Husband conceded that, in hindsight, his decision to leave his job at GM was not a "smart move."

In April 2016, Husband began working for a pool maintenance company. At the time of trial, he was earning $2,080 per month, an amount lower than his estimated monthly living expenses.

## C. CHANCERY COURT DECISION

The chancery court issued findings of fact and conclusions of law on June 30, 2016. The court granted Wife an absolute divorce based on Husband's inappropriate marital conduct. On the issue of domestic abuse, the court found that Husband was not a credible witness and credited Wife's testimony over that of Husband.

The court reviewed the agreed permanent parenting plan and determined that the plan was in the best interest of the child. Wife was named primary residential parent, and Husband was awarded no residential parenting time. The court adopted the restrictions imposed by the juvenile court in the dependency and neglect proceeding as conditions precedent to Husband obtaining visitation. The court also ordered Husband to petition the chancery court before seeking any contact with his daughter and to pay for his daughter's counseling.

The court specifically found Husband was voluntarily underemployed. When Wife filed for divorce, Husband was earning $7,051 per month at GM. The court found Husband's testimony that he was at risk of losing his job for poor performance not credible. The court also found that, after Husband terminated his employment, he did not make a good faith effort to obtain new employment consistent with his experience. Instead, Husband moved to Michigan and accepted seasonal employment with a pool company at a significantly lower wage.

In determining child support, the court imputed income to Husband based on his earning capacity. The court determined that the best evidence of Husband's earning capacity was the amount he earned while employed at GM. Based on Husband's imputed income and Wife's actual income, the court ordered Husband to pay $1,175 per month in child support.

The court then classified, valued, and divided the marital estate. The marital estate was relatively small. The only significant assets were Husband's 401K plan and pension. After the division of marital property and debt, Wife was awarded $109,646.95 and Husband $102,438.40.

To determine the nature, amount, and duration of spousal support, the court considered each of the relevant statutory factors. *See* Tenn. Code Ann. § 36-5-121(i) (2017). Based on the disparity in the spouses' earning capacities, the court determined that Wife was an economically disadvantaged spouse with a demonstrated need for an additional $3,500 in support each month. The court further found that, if Husband were not voluntarily underemployed, he would have the ability to pay alimony.

The court found that Wife could not be rehabilitated and that transitional alimony would not be appropriate. Based on the length of the marriage, the couple's decision that Wife would "sacrifice her prior career to be a stay at home mother," the couple's standard of living during the marriage, and Husband's fault in the demise of the marriage, the court found an award of alimony in futuro of $2,750 per month to be appropriate.

The court also ordered Husband to pay Wife's attorney's fees of $17,998.10 as alimony in solido. Finally, because Husband had ceased paying pendente lite support after his move to Michigan, the court granted Wife a judgment in the amount of $5,810 for past-due support.

On the tort claim, the court found Wife met her burden of proving that Husband committed assault, battery, and intentional infliction of emotional distress. As compensatory damages, the court ordered Husband to reimburse Wife for the cost of counseling and awarded Wife $10,000 for her pain and suffering and another $10,000 for the child's pain and suffering. The court denied Wife's request for punitive damages.

**II.**

Husband raises numerous issues on appeal. With respect to the divorce, Husband challenges the valuation of the marital residence, the calculation of child support, and the awards of alimony in futuro and in solido. Husband also contends that the court erred in its award of damages on Wife's tort claim.

A. VALUATION OF MARITAL RESIDENCE

We can quickly dispose of Husband's argument that the court erred in its valuation of the marital residence. The value of marital property is a question of fact. *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987). We presume the court's valuation is correct unless the evidence preponderates against it. *Id.*; Tenn. R. App. P. 13(d).

Here, the evidence does not preponderate against the trial court's value of $153,600. The trial court "is free to place a value on a marital asset that is within the range of evidence submitted." *Wallace*, 733 S.W.2d at 107. Wife opined that the fair market value of the home was $153,600, which was equivalent to the value on the most

6

recent property tax appraisal. Although Husband disagreed with Wife's valuation, he failed to provide an alternative value. "The burden is on the parties to produce competent evidence of value, and the parties are bound by the evidence they present." *Id.*

## B. CHILD SUPPORT

### 1. Willful Underemployment

We next address Husband's claim that the court erred in setting child support based on his earning capacity rather than his actual gross income. "The fairness of a child support award depends on an accurate determination of both parents' gross income or ability to support." *Massey v. Casals*, 315 S.W.3d 788, 795 (Tenn. Ct. App. 2009). Under the Tennessee Child Support Guidelines, a court may set child support based on a parent's income potential or earning capacity if the court finds that a parent is willfully or voluntarily underemployed. Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2). "This is based on the premise that parents may not avoid their financial responsibility to their children by unreasonably failing to exercise their earning capacity." *Massey*, 315 S.W.3d at 795.

The trial court's determination that Husband is willfully underemployed is entitled to a presumption of correctness, particularly "when it is premised on the trial court's singular ability to ascertain the credibility of the witnesses." *Richardson v. Spanos*, 189 S.W.3d 720, 726 (Tenn. Ct. App. 2005). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005). We will not overturn a trial court's assessment of credibility on appeal absent clear and convincing evidence to the contrary. *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

The Guidelines do not presume that a parent is willfully underemployed. Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(ii). The trial court has the difficult task of "ascertain[ing] the reasons for the parent's occupational choices, and . . . assess[ing] the reasonableness of these choices in light of the parent's obligation to support his or her child(ren) and . . . determin[ing] whether such choices benefit the children." *Id.* Thus, the "complete factual background of the obligor's situation" is relevant. *Ralston v. Ralston*, No. 01A01-9804-CV-00222, 1999 WL 562719, at *5 (Tenn. Ct. App. Aug. 3, 1999).

The court's first consideration is whether the choice to leave the previous employment was voluntary or involuntary. *Eldridge v. Eldridge*, 137 S.W.3d 1, 21 (Tenn. Ct. App. 2002). "When a party with child support obligations voluntarily leaves their employment and chooses to accept a job which provides significantly less income, courts are more inclined to find willful and voluntary underemployment." *Id.*; *see, e.g.*, *DeWerff v. DeWerff*, No. M2004-01283-COA-R3-CV, 2005 WL 2104736, at *4 (Tenn.

Ct. App. Aug. 31, 2005) (affirming finding that the father was voluntarily underemployed when he "voluntarily chose to abandon a successful legal practice in order to relocate to another state for purely personal reasons"); *Willis v. Willis*, 62 S.W.3d 735, 738-39 (Tenn. Ct. App. 2001) (affirming determination that the father was voluntarily underemployed when he changed jobs because he was dissatisfied); *Watters v. Watters*, 22 S.W.3d 817, 823 (Tenn. Ct. App. 1999) (affirming finding of voluntary unemployment when the father quit his job rather than accept a lateral transfer).

Next, the court scrutinizes the parent's subsequent course of conduct. *Eldridge*, 137 S.W.3d at 21. Whether the parent made a good faith effort to replace their lost income is also relevant. *Id.*; *see, e.g.*, *Sitz v. Sitz*, No. E2012-01726-COA-R3-CV, 2013 WL 5450416, at *10 (Tenn. Ct. App. Sept. 30, 2013) (affirming finding of voluntary underemployment when the husband worked only sporadically at jobs that did not use his education, skills, or experience and only submitted seven written job applications in two years); *Kaplan v. Bugalla*, No. M2006-02413-COA-R3-CV, 2007 WL 4117787, at *5 (Tenn. Ct. App. Nov. 16, 2007) (noting that the father limited his job search to online inquiries and failed to make any additional efforts to find new employment); *Demers v. Demers*, 149 S.W.3d 61, 72 (Tenn. Ct. App. 2003) (affirming finding of voluntary underemployment in part because the father failed to take affirmative steps to find regular employment commensurate with his skills).

The trial court found Husband voluntarily ended his long tenure with GM and accepted a severance package that restricted his future employment. Although his separation agreement indicates that his decision was voluntary, Husband testified that he was forced to quit because his job was in jeopardy. The trial court found Husband's testimony on this issue not credible, and we find no basis in this record to overturn that finding. *See Hopwood v. Hopwood*, No. M2015-01010-COA-R3-CV, 2016 WL 3537467, at *10 (Tenn. Ct. App. June 23, 2016) ("Given that the trial court did not credit Father's testimony, we cannot conclude that the evidence in the record preponderates against the trial court's finding that Father was willfully and voluntarily underemployed.").

Even so, Husband maintains that his decision to leave his employment was reasonable because of the stress he was under at work in conjunction with his long commute and the added responsibility of caring for his elderly parents. Still, the evidence does not preponderate against the trial court's finding that Husband's decision was not reasonable in light of his duty to support his child.

The trial court also found that Husband did not make a good faith effort to obtain new employment commensurate with his qualifications. While acknowledging that his current job does not use his skills or experience, Husband claims that his lack of an engineering degree and the restrictions in the separation agreement severely hampered his efforts to replace his lost income.

But the evidence in the record supports the court's finding of a lack of effort on the part of Husband to find employment of any type. He was aware of the restrictions in the severance package when he accepted it. Despite this and the availability of a placement service, Husband made only minimal efforts to find new employment. *See Kaplan*, 2007 WL 4117787, at *5. He even delayed his job search for several months based on his need for "me time."

Although Husband argues that Wife failed to prove that he terminated his employment in an effort to avoid paying child support, that level of proof is not required. Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(ii)(I) ("A determination of willful and/or voluntary underemployment or unemployment is not limited to choices motivated by an intent to avoid or reduce the payment of child support."). The court may base its determination "on any intentional choice or act that adversely affects a parent's income." *Id.*; *see Anderson v. Anderson*, No. 01A01-9704-CH-00186, 1998 WL 44947, at *4-5 (Tenn. Ct. App. Feb. 6, 1998) (rejecting argument that the wife had to prove that employment decision was made with the specific intent to escape child support obligation). In sum, none of Husband's arguments overcome the presumption of correctness we must accord the trial court's finding of willful underemployment.

2. Earning Capacity

Husband also contends that the court failed to properly determine his earning capacity. In making this determination, the Guidelines direct courts to consider the parent's past and present employment, education, and training. Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(ii)(II).

Based upon our review of the record, the evidence does not preponderate against the court's finding that Husband has the capacity to earn $7,150 per month. As discussed previously, while Husband only has a high school degree, he is a highly trained automotive employee with marketable skills. And his previous income from GM is relevant evidence of earning capacity. *See Brooks v. Brooks*, 992 S.W.2d 403, 407 (Tenn. 1999) (holding that the earnings derived from previous employment were the best evidence of parent's earning capacity); *Sitz*, 2013 WL 5450416, at *12 (agreeing that the husband's income from recent employment was best evidence of earning potential); *Ralston*, 1999 WL 562719, at *6 (noting that courts often use previous income of the obligor as an accurate measure of potential income when the obligor voluntarily discontinued the previous employment because "without the conscious decision to cease the activity, the actual income would have continued"); *Watters*, 22 S.W.3d at 823 (finding that the husband's previous income was a good indicator of his earning potential).

## C. ALIMONY

### 1. Alimony in Futuro

"[T]rial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). In reviewing the trial court's award of alimony, we apply an abuse of discretion standard. *Id.* "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.*

Alimony in futuro is "intended to provide support on a long-term basis until the death or remarriage of the recipient." *Id.* at 107; (citing Tenn. Code Ann. § 36-5-121(f)(1)). This long-term support is awarded when one spouse is relatively economically disadvantaged and rehabilitation is not feasible. *Id.* Rehabilitation is not feasible if,

> the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(f)(1). Even though awards of this type of spousal support are disfavored, alimony in futuro may be awarded under the proper circumstances. *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *see Gonsewski*, 350 S.W.3d at 109.

Here, the court considered the relevant statutory factors and determined that an award of alimony in futuro was appropriate. *See* Tenn. Code Ann. § 36-5-121(i). Although Husband contends that the parties' post-divorce earning capacities are roughly equivalent, his argument ignores the court's finding that he is willfully underemployed. As noted above, the evidence does not preponderate against the court's findings on earning capacity.

Husband does not argue that Wife is underemployed or capable of rehabilitation. Rather, he relies on Wife's education level[1] and potential for "upward mobility" in her new employment. Even so, Wife has spent the past eleven years supporting Husband in

---

[1] Contrary to Husband's assertion that Wife has an associate's degree, Wife testified that she had a certification from an executive assistant program, not a college degree.

10

his career, not pursuing her own. The disparity in relative earning capacity between these spouses is clearly established, and there is no evidence in this record that additional education or training would significantly increase Wife's earning capacity.

Husband also contends that the court placed undue emphasis on fault. Alimony "is not and never has been intended by our legislature to be punitive." *Russell v. Russell*, No. M2012-02156-COA-R3-CV, 2013 WL 6228164, at *7 (Tenn. Ct. App. Nov. 27, 2013) (quoting *Lindsey v. Lindsey*, 976 S.W.2d 175, 179-80 (Tenn. Ct. App. 1997)). We conclude that the court's decision was not punitive. *See Acosta v. Acosta*, 499 S.W.3d 785, 792 (Tenn. Ct. App. 2016), *perm. app. denied* (Tenn. Sept. 23, 2016) (finding no indication that the lower court "placed such a heavy emphasis on Husband's fault that the judgment was thereby rendered punitive"). In addition to fault, other relevant statutory factors also supported an award of alimony in futuro, including the long duration of the marriage, the couple's standard of living during the marriage, and the disparity in earning capacity.

In the end, however, the most important considerations in determining spousal support are the "disadvantaged spouse's need and the obligor spouse's ability to pay." *Gonsewski*, 350 S.W.3d at 110. Husband argues that he lacks the ability to pay the amount awarded. But, as previously discussed, Husband is capable of earning a level of income that would allow him to pay this alimony award. *Cf. Mayfield v. Mayfield*, 395 S.W.3d 108, 116-17 (Tenn. 2012) (concluding that court's finding that recipient spouse was underemployed is a relevant consideration in refusing to award spousal support). Even after paying $1,175 in child support and $2,184 in living expenses,[2] Husband has the ability to pay $2,750 in spousal support. Viewing the evidence in a light most favorable to the trial court's decision, we find no abuse of discretion in the decision to award alimony in futuro. *See Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011).

2. Alimony in Solido

Next, we consider Husband's claim that the court erred in awarding Wife $17,998.10 for her attorney's fees. "It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido." *Gonsewski*, 350 S.W.3d at 113. Thus, we review the trial court's decision under the deferential abuse of discretion standard. *Id.* As with all alimony awards, the court's decision must be guided by consideration of the relevant statutory factors. *Id.*; *see* Tenn. Code Ann. 36-5-121(i). Again, the most important factors are need and ability to pay. *Watson v. Watson*, 309 S.W.3d 483, 501 (Tenn. Ct. App. 2009). An award of alimony to pay attorney's fees is only appropriate

---

[2] At trial, Husband admitted that his claimed expenses for rent and utilities were merely estimates because he was living rent-free with a friend. And we note that Husband can petition the court to end his child support obligation after a year based on the minor child reaching majority.

when one spouse lacks sufficient funds to pay their own legal expenses or would be forced to deplete their resources to pay them and the other spouse has the ability to pay. *Gonsewski*, 350 S.W.3d at 113.

We conclude that the trial court did not abuse its discretion in awarding Wife alimony in solido. Husband was clearly at fault in the demise of this long-term marriage. Wife lacks sufficient resources to pay her own attorney's fees, and Husband has the ability to pay. Wife has an expected annual income of approximately $25,000 while Husband has the capacity to earn $84,000. Wife should not be forced to use the previously awarded spousal support or to deplete the few assets she received in the property division to pay her attorney's fees. *See Hernandez v. Hernandez*, No. E2012-02056-COA-R3-CV, 2013 WL 5436752, at *8 (Tenn. Ct. App. Sept. 27, 2013) (concluding that the evidence did not preponderate against trial court's finding that the wife could not pay her attorney's fees "without depleting her already meager resources"); *Owens v. Owens*, 241 S.W.3d 478, 496 (Tenn. Ct. App. 2007) (concluding that trial court erred in requiring the wife to pay her own attorney's fees from the "assets that she will eventually use to support herself in retirement").

## D. TORT CLAIM

Finally, we turn to Husband's appeal of the award of damages in tort. Wife's divorce complaint included a claim for damages from three intentional torts: assault, battery, and intentional infliction of emotional distress. After finding she met her burden of proof on all counts,[3] the court awarded compensatory damages, which included Wife's counseling costs, $10,000 for her own pain and suffering, and $10,000 for her daughter's pain and suffering.

Husband asserts that Wife was not entitled to recover for her daughter's pain and suffering. Generally, when a child suffers personal injuries, two causes of action arise. *Dudley v. Phillips*, 405 S.W.2d 468, 469 (Tenn. 1966). While the child's parent may recover for loss of the child's services and medical expenses, any action to recover for pain and suffering belongs to the child. *Id.* Because minors cannot bring suit in their own name, parents may bring suit on their behalf in accordance with our procedural rules. *Vandergriff v. ParkRidge E. Hosp.*, 482 S.W.3d 545, 552 (Tenn. Ct. App. 2015); *see* Tenn. R. Civ. P. 17.03. We find no indication in this record, however, that Wife brought suit both in her own name and on behalf of her daughter. The tort allegations in the

---

[3] On appeal, Husband claims that Wife failed to prove her claim for intentional infliction of emotional distress. Because we do not find the amount of damages awarded to be excessive even in the absence of proof of intentional infliction of emotional distress, we decline to address Husband's arguments that his conduct was not outrageous and Wife's mental injuries were not serious. *See Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012) (outlining the elements of an intentional infliction of emotional distress claim).

complaint are limited to Wife's claims for personal injuries. Under these circumstances, the court erred in awarding Wife an additional $10,000 for her daughter's pain and suffering.

Husband also contends Wife failed to establish that he caused her injuries. We disagree. Wife provided graphic testimony of Husband's abuse, culminating in her broken rib. *See Varner v. Perryman*, 969 S.W.2d 410, 412 (Tenn. Ct. App. 1997) (affirming verdict based on lay testimony that accident caused stomach bruising). Ms. Pincince also testified about Wife's mental and emotional response to Husband's abuse.

Finally, Husband argues that the court awarded an excessive amount of damages for Wife's pain and suffering. In a nonjury case, we will affirm a damages award "unless 'the trial court has adopted the wrong measure of damages or . . . the evidence preponderates against the amount of damages awarded.'" *Wilson v. Monroe Cty.*, 411 S.W.3d 431, 443 (Tenn. Ct. App. 2013) (quoting *Moody v. Lea*, 83 S.W.3d 745, 751 (Tenn. Ct. App. 2001)). "There is no mathematical formula for calculating damages in a personal injury action; rather, the award of damages is left to the discretion of the trier of fact upon consideration of the particular facts of the case." *Id.*

Pain and suffering awards are designed to compensate a plaintiff for the "physical and mental discomfort caused by an injury" and include the plaintiff's mental and emotional responses to the pain, "such as anguish, distress, fear, humiliation, grief, shame, or worry." *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 715 (Tenn. Ct. App. 1999). Because evaluation of this type of damages is often "highly subjective" and pain and suffering is "not susceptible to proof by a specific dollar amount," we give the trier of fact "broad latitude in fixing [a] monetary amount." *Dedmon v. Steelman*, ___ S.W.3d ___, No. W2015-01462-SC-R11-CV, 2017 WL 5505409, at *4 (Tenn. Nov. 17, 2017). Here, the evidence in this record does not preponderate against the amount of the damages award.

## III.

For the foregoing reasons, we vacate the award of an additional $10,000 to Wife for her daughter's pain and suffering. In all other respects, we affirm the decision of the trial court.

_____
W. NEAL MCBRAYER, JUDGE

13